Filed 7/31/25 P. v. Campbell CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B335706 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA101790) |
| v. | |
| CHRISTOPHER CAMPBELL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge. Affirmed.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Christopher Campbell appeals from the trial court's denial of his petition for resentencing under Penal Code section 1172.6 (former § 1170.95)[1] following an evidentiary hearing.

We affirm.

**BACKGROUND**

I. *Facts*[2]

On August 25, 1999, teenager Kenneth Colter (Colter) damaged the tire of defendant's son's bicycle. Defendant's son was upset, but Colter said he would get him new rims. Colter left, accompanied by Damon C. (Damon). A few minutes later, defendant arrived. He appeared very angry and was yelling and cursing. Defendant asked where Colter had gone and drove off.

Defendant found Colter and Damon, "jumped out of the car" "kind of mad[,]" and asked them why they had "mess[ed] up his son's bike." Defendant demanded that they get his son another rim and said, "'Well, if you don't get a rim, I['m] going to beat your behind.'" Defendant "jumped in [Colter]'s face" and

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, former section 1170.95 was renumbered section 1172.6, with no substantive change. (Stats. 2022, ch. 58, § 10; *People v. Emanuel* (2025) 17 Cal.5th 867, 880, fn. 4.) For simplicity, we refer to the section by its new numbering.

[2]    We draw these facts from the trial record in defendant's direct appeal from his conviction (*People v. Campbell* (Jan. 7, 2002, B146172) [nonpub. opn.] (*Campbell*)), which we have judicially noticed at defendant's request.

said in a threatening manner, "'Do you know I'll knock you out? I'll knock you out.'" Defendant got back into his car.

Damon later saw Colter arguing with defendant and defendant's brother, Sidney Campbell (Sidney),[3] on a basketball court. Sidney asked Colter to come back and talk. Colter responded, "'What kind of person that would come up to another person and speak to that person that has a gun?'" The argument got louder, and Colter backed up. Damon heard shots fired and ducked. Damon's mother took him inside his house. Through the window, Damon saw Colter, defendant, and Sidney shooting guns. Defendant and Sidney fired their guns at Colter at the same time.

Shortly after the shooting, defendant asked Jorge D. (Jorge) if he had been involved in damaging defendant's son's bicycle. Defendant said "that he would kill for his son."

Gerrina Hawes (Hawes) testified that, prior to the shooting, Sidney said to her, "'Bitch, what you doing over here. Take your mother f**king ass home because we're right in the middle of s**t.'" Hawes saw Colter backing up with his hands behind his back. Sidney and defendant walked toward Colter. While holding a semiautomatic gun, Sidney said, "'Come here, [Colter]. Man, come here. Let's talk about it.'" Hawes heard gunshots and saw Sidney shooting his gun. After the shooting, Colter left the scene. Hawes eventually found Colter trying to get up from the ground. Blood squirted from his mouth and then he laid still.

---

[3]    Because defendant and his brother share the same last name, we refer to Sidney by his first name for clarity. No disrespect is intended.

According to the deputy medical examiner who performed the autopsy, Colter died as a result of a gunshot wound to the neck that entered his lower jaw.

## II. *Procedural History*

### A. Conviction and sentencing

A jury found defendant guilty of the second-degree murder of Colter. (§ 187, subd. (a).) The jury found true the allegations that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)) and personally used a firearm during the commission of the crime (§§ 12022.5, subd. (a), 12022.53, subd. (b)). The jury found not true the allegation that defendant personally and intentionally discharged a firearm, proximately causing great bodily injury or death to Colter. (§ 12022.53, subd. (d).)

The trial court sentenced defendant to serve 35 years to life in state prison. We affirmed the judgment on direct appeal. (*Campbell*, *supra*, B146172.)

### B. Section 1172.6 petition and evidentiary hearing

In January 2023, defendant filed a petition for resentencing pursuant to section 1172.6. The trial court appointed counsel to represent defendant in connection with his petition. Finding that defendant had made a prima facie showing for relief, the court held an evidentiary hearing on October 3, 2023, where the court heard argument from the People and defense counsel but neither side presented new evidence.

### C. Trial court's ruling

On October 31, 2023, the trial court issued a memorandum of decision denying defendant's section 1172.6 petition. The court found that the People had established beyond a reasonable doubt

4

that defendant was ineligible for resentencing, based on two different theories.

First, although the trial court found that "the evidence does not establish that [defendant] was the actual killer, it clearly establishes that he aided and abetted the commission of the murder." The court explained: "This entire case resulted from an incident where [defendant]'s son's bicycle had been damaged by the murder victim, . . . Colter. [Defendant] found out about the incident, got upset and went looking for the victim, Colter. [Defendant]'s younger brother, [Sidney], went with him. [Defendant] was upset and referenced that he would 'kill for his son.' Sidney . . . was holding a semi-automatic gun as [defendant] was yelling at the victim. There was arguing between the parties which ultimately resulted in multiple gunshots being fired. There was evidence that [defendant] and . . . [Sidney] both fired shots at the victim. It was not established who fired the fatal shot killing the victim, but the jury found 'true' that [defendant] personally discharged a firearm in the commission of the offense. There was evidence that the victim, during the course of the argument, may have pulled out a gun. However, the jury rejected . . . [defendant]'s claim of self-defense."

The trial court concluded that "[t]hese facts clearly show that [defendant] could be convicted on an aider and abettor theory. [Defendant]'s words and conduct aided and abetted the commission of the shooting[]s[;] . . . it was [defendant] who got upset about what happened with his son. It was [defendant]'s idea to go and find the victim. [Defendant] was the main instigator of the argument and acknowledged that he would '[k]ill for his son.' Clearly, [defendant] fired his weapon and . . . [Sidney] also fired his weapon, . . . [defendant] 'instigated,

5

prompted and encouraged' the use of deadly force. [Defendant] fired multiple shots—some clearly after Sidney had fired which clearly facilitated the homicide. It is a very reasonable inference to presume that [defendant] could have influenced his younger brother's conduct. Yet, [defendant] did nothing to discourage Sidney . . . from shooting and he did not make any attempt to prevent the shooting."

Based on the "totality of the evidence in this case," the trial court found that defendant "by his conduct was, in essence, telling his brother to shoot the victim[,]" which supported the court's finding that defendant "acted with implied malice directly aiding and abetting the murder[.]"

<u>Second</u>, the trial court found that defendant "was 'a major participant' in the shooting and acted with 'reckless indifference to human life.'" The court emphasized that it was defendant's "idea to confront the victim"—"a young boy . . . by himself." Defendant "ultimately obtained a gun and fired his gun multiple times at the victim. He did this at the same time that his younger brother was firing multiple shots at the victim."

D. <u>Appeal</u>

Defendant timely appealed from the denial of his section 1172.6 petition.

## DISCUSSION

I. *Background Legal Principles*

A. <u>Senate Bill No. 1437</u>

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) substantively amended sections 188 and 189 to "eliminate[] natural and probable consequences liability for murder as it applies to aiding and abetting[] and limit[] the scope of the felony-murder rule. [Citations.]" (*People v. Lewis* (2021)

6

11 Cal.5th 952, 957 (*Lewis*).) "Now, a conviction for . . . [murder] requires proof that the defendant (1) was the actual killer (who acted with the requisite express or implied malice), (2) directly aided and abetted the actual killer while acting with the intent to kill, or (3) was a major participant in a felony who acted with reckless indifference to the value of human life." (*People v. Duran* (2022) 84 Cal.App.5th 920, 927.) "[A] principal in a murder, including an aider or abettor, may still be criminally liable if that individual personally possesses malice aforethought, whether express or implied. [Citations.]" (*People v. Harris* (2024) 105 Cal.App.5th 623, 631.)

Senate Bill No. 1437 also added what is now section 1172.6, which provides a procedural mechanism for defendants who could not be convicted of murder under the amended laws to petition for retroactive relief. (*Lewis*, *supra*, 11 Cal.5th at p. 959.) Upon the filing of a properly pleaded petition for resentencing, the trial court must conduct a prima facie analysis to determine the defendant's eligibility for relief. (§ 1172.6, subds. (b)(3) & (c); *People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis*, at pp. 957, 960.) If the court determines that the requisite prima facie showing has been made, it must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subd. (c); *People v. Wilson* (2023) 14 Cal.5th 839, 869.)

"At the evidentiary hearing following issuance of an order to show cause, the superior court acts as an independent fact finder, and the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under California law following Senate Bill No. 1437's amendments. [Citations.] The petitioner and the prosecutor may offer new or additional evidence, and the court

may consider evidence 'previously admitted at any prior hearing or trial that is admissible under current law,' including witness testimony. [Citations.]" (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1065–1066 (*Hill*).)

      B. <u>Aiding and abetting implied malice murder</u>

"Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder. [Citations.]" (*People v. Knoller* (2007) 41 Cal.4th 139, 151.) Malice can be either express or implied. (§ 188.) Express malice requires an intent to kill; implied malice does not. (*People v. Soto* (2018) 4 Cal.5th 968, 976.) "Murder is committed with implied malice when 'the killing is proximately caused by "'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.'"' [Citation.]" (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).)

To be liable for implied malice murder as an aider and abettor, a defendant "'must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life.' [Citations.]" (*Reyes*, *supra*, 14 Cal.5th at p. 991.)

Aiding and abetting implied malice murder remains a valid theory after Senate Bill No. 1437. (*People v. Gudiel* (2024)

107 Cal.App.5th 848, 859 (*Gudiel*); *People v. Maldonado* (2023)
87 Cal.App.5th 1257, 1263 (*Maldonado*).)

II. *Standard of Review*

On appeal from the denial of a section 1172.6 petition
following an evidentiary hearing, we review the trial court's
findings for substantial evidence. (*People v. Vargas* (2022)
84 Cal.App.5th 943, 951 (*Vargas*).) "In conducting our review, we
consider the whole record in the light most favorable to the . . .
court's findings [citation], and we presume ""every fact in
support of the judgment the trier of fact could have reasonably
deduced from the evidence."" [Citation.] We ask 'whether
substantial evidence, defined as reasonable and credible evidence
of solid value, has been disclosed, permitting the trier of fact to
find guilt beyond a reasonable doubt.' [Citation.] And based on
this whole record review, we "'determine whether *any* rational
trier of fact could have found the essential elements of the
crime . . . beyond a reasonable doubt.'" [Citation.]" (*Hill*, *supra*,
100 Cal.App.5th at p. 1066.)

III. *Analysis*

Substantial evidence supports the trial court's finding,
beyond a reasonable doubt, that defendant is guilty of directly
aiding and abetting implied malice murder, a theory unaffected
by Senate Bill No. 1437.[4] (*Gudiel*, *supra*, 107 Cal.App.5th at
p. 859; *Maldonado*, *supra*, 87 Cal.App.5th at p. 1263.)

---

[4] Because we may affirm on this basis alone, we do not
address whether the trial court erred in finding defendant guilty
of murder based on the alternate theory that he was a major
participant who acted with reckless indifference to human life.
(*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1239 ["We

9

Factors to consider in determining aiding and abetting liability include presence at the scene of the crime, companionship with other perpetrators, conduct before and after the crime, and motive. (*People v. Schell* (2022) 84 Cal.App.5th 437, 443 (*Schell*); *Vargas, supra*, 84 Cal.App.5th at p. 955.) All of these factors support the finding that defendant "'aid[ed] the commission of the life-endangering *act*'" (*Reyes, supra*, 14 Cal.5th at p. 991)—the fatal shooting of Colter by Sidney.[5]

Defendant was very angry at Colter for damaging his son's bicycle; he went looking for Colter and threatened physical violence if Colter did not replace the rim. Sometime later, defendant and Sidney argued with Colter on the basketball court. Defendant, Sidney, and Colter each brandished a gun and gunfire ensued. Not only was defendant present when Colter was fatally

_____

"'review the [trial court's] ruling, not the court's reasoning, and, if the ruling was correct on any ground, we affirm[]'"'"].)

[5] The jury found not true the allegation that defendant personally and intentionally discharged a firearm, proximately causing great bodily injury or death to Colter. (§ 12022.53, subd. (d).) Accordingly, we disregard any evidence incompatible with that finding. (See *People v. Cooper* (2022) 77 Cal.App.5th 393, 398 [holding "that a trial court cannot deny relief in a section [1172.6] proceeding based on findings that are inconsistent with a previous acquittal when no evidence other than that introduced at trial is presented"]; see also *People v. Arnold* (2023) 93 Cal.App.5th 376, 391 [remanding for new § 1172.6 evidentiary hearing in which "the court shall not make any finding or rely on any evidence which contradicts the jury's finding that the personal use of a knife sentencing enhancement was not true"].) We can and do consider evidence that defendant personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), as the jury found that allegation to be true.

shot, but he actively participated in the attack by shooting at Colter at the same time as Sidney. Following the shooting, defendant said "that he would kill for his son." As his brother, defendant shared a close companionship with the actual killer, Sidney.

Urging reversal, defendant insists that "[n]o evidence showed [defendant] provided the gun to Sidney[;] asked, encouraged or told Sidney to shoot[;] struck or beat . . . Colter as part of the shooting[;] or chased . . . Colter trying to shoot him." Defendant essentially asks us to reweigh the evidence. That is not our role. (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1090 ["Under a substantial evidence review, . . . we do not reweigh the evidence"].) Having already identified substantial evidence to support the trial court's finding, "it is of no consequence that the . . . court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion. [Citations.]" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874, italics omitted.)

Defendant also argues that the trial court erred in basing its decision on his pre-shooting argument with Colter rather than his knowledge of a life endangering act. We disagree. The court expressly recognized that the life-endangering act was the shooting—not just the preshooting argument. The court found that defendant's "words and conduct aided and abetted the commission of the *shooting*[]" and that it was defendant who "'instigated, prompted and encouraged' *the use of deadly force*." (Italics added.)

Defendant asserts that the trial court erred by making factual findings that "conflict with and are unsupported by the record, especially as shown by the [original] court's findings and

11

the trial prosecutor's concessions." Again, we are unpersuaded. As discussed above, we have identified ample substantial evidence that defendant aided and abetted implied malice murder. Tactical decisions and arguments made by the prosecutor at trial and procedural rulings by the original trial court do not constitute findings that bind the court at a section 1172.6 evidentiary hearing. (See *Hill*, *supra*, 100 Cal.App.5th at p. 1065 ["the superior court acts as an independent fact finder" at a § 1172.6 evidentiary hearing].) The prosecution may "present different theories of guilt at the evidentiary hearing" without "implicat[ing] constitutional concerns." (*Schell*, *supra*, 84 Cal.App.5th at p. 444; see also *People v. Duchine* (2021) 60 Cal.App.5th 798, 813 ["By allowing new evidence and providing for an evidentiary hearing, the Legislature plainly intended that the issues concerning whether the defendant was guilty under theories of murder not previously or necessarily decided would be resolved anew"].)[6]

Finally, defendant makes a cumulative error argument for reversal. "Cumulative error is present when the combined effect of the trial court's errors is prejudicial or harmful to the defendant. [Citations.]" (*People v. Capers* (2019) 7 Cal.5th 989, 1017.) This contention fails because defendant has not established multiple errors to cumulate.

---

[6] The California Supreme Court has yet to express a "view on whether a court may deny a section 1172.6 resentencing petition based on a theory of murder not argued by the prosecution at trial." (*Reyes*, *supra*, 14 Cal.5th at p. 987.)

## DISPOSITION

The order denying defendant's section 1172.6 petition for resentencing is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

13